UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT MERRIWEATHER,

        Plaintiff,

                          Case No.  04-71706

v.

                          District Judge Gerald E. Rosen
                          Magistrate Judge R. Steven Whalen


T. A. ZAMORA,

        Defendant.

_____ /

## REPORT AND RECOMMENDATION

      Plaintiff, a prisoner in the custody of the Federal Bureau of Prisons (BOP) at

Milan Federal Detention Center, filed a complaint on May 12, 2004, alleging that

Defendants violated his Fifth and Sixth Amendment rights by opening

correspondence from the courts, the Department of Justice, and various attorneys in

his absence, despite  his repeated requests that mail room employees open his legal

mail only in his presence.[1]   Before this Court is Defendant Zamora's Motion to

---

[1]Although Plaintiff does not allege First Amendment violations in his
Complaint (they are first raised in his response motion on page 7) a prisoner's right
to receive mail generally invokes such claims.  Plaintiff bases his claims in large part
on  *Sallier v. Brooks,* 343 F. 3d 868 (6th Cir. 2003) which recognized First
Amendment violations implicit in the mistreatment of inmates' legal mail. *Id.* at 878.
Therefore, Plaintiff's pro se claim should be liberally construed to include First
Amendment violations.  *Perreault v. Hostetler* 884 F.2d 267, 270 (6th Cir. 1989);

Dismiss[2], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion to dismiss be GRANTED IN PART AND DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, proceeding in forma pauperis, brings this *Bivens*[3] action against T.A. Zamora, mail room manager at FCI - Milan, Michigan. Plaintiff, who arrived at the Milan facility on September 21, 2001, alleges that he complained "diligently and continuously" to Defendant Zamora that his legal mail from various courts, the Department of Justice, and his attorneys was being opened in his absence, but received only sarcastic and dismissive comments from Defendant. *Complaint* at ¶ 5. He alleges that a total of forty-one pieces of legal mail was opened outside of his presence between October 12, 2001and March 11, 2004. *Id.* at ¶7.

---

*Haines v. Kerner*, 404 U.S. 519, 520-521; 92 S.Ct. 594, 595-596; 30 L.Ed.2d 652 (1972).

[2]Plaintiff brought suit against Defendants Zamora, unknown mail room employees, former and current wardens John Hemingway, H.J. Marberry, Bureau of Prisons Regional Director G.L. Hershberger, and Bureau of Prison' National Administrator of Inmate Appeals Harrell Watts. On August 23, 2004 The Honorable Gerald E. Rosen dismissed Defendants Hemingway, Marberry, Hershberger, and Watts [docket no. 7]. On September 1, 2004, Plaintiff named an additional twelve defendants. This recommendation pertains only to the single remaining original defendant, T.A. Zamora.

[3]*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388; 91 S.Ct. 1999, 29; L.Ed.2d 619 (1971)

2

Defendant bases her motion to dismiss on the following arguments.  First, she asserts that the incidents in question do not rise to the level of a constitutional violation; second, that Plaintiff has failed to show any personal action by Defendant; and third, that Defendant is entitled to qualified immunity.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state  a claim upon which relief can be granted."  Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)."  In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

3

entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits,

4

depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.  ANALYSIS

**A.  Constitutional Violations**

Defendant first argues that Plaintiff's allegations of improper mail handling do not rise to the level of a constitutional violation.  Defendant argues that of the forty-one pieces of legal mail opened outside Plaintiff's presence, only seven of the pieces in question comported with the requirements set out in  Bureau of Prisons'(BOP) Program Statement (P.S.) 5265.11 for the labeling of  legal or otherwise "special" mail and were therefore opened improperly.  *Motion to Dismiss* at 3-9.  Defendant cites *Biregu v. Reno,* 59 F.3d 1445, 1452 (3rd Cir. 1995) to support her contention that improperly opening seven out of forty-one pieces of mail does not amount to a "pattern and practice" sufficient to implicate Plaintiff's constitutional rights.

Courts have uniformly recognized that prisoners hold an interest in confidential attorney communication. "We find that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th 2003).  *See Kensu v. Haigh,* 87 F.3d 172, 174 (6th Cir.1996) ("The right of

a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts."). "[A] prisoner's right to receive mail is protected by the First Amendment and . . .the attorney-client relationship is shielded from unwarranted intrusion in criminal settings by the Sixth Amendment. *Sallier,* 343 F.3d at 878.

In *Wolff* v. *McDonnell,* 418 U.S. 539, 576-577, 94 S.Ct. 2963, 2985 (1974), the Court found that while inmates' legal mail should be opened only in their presence, inmates' rights were subject to reasonable prison regulations.[4]  *See, Parrish v. Johnson,*  800 F.2d 600, 603 (6th Cir. 1986) ("In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly-applied policy, open an inmate's incoming mail.")

BOP P.S. 5265.11 states that "special mail" includes mail from the following senders:

> "President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts."

---

[4]*Wolff*  referred to letters from attorneys, not other types of legal mail recognized as "special" by the BOP.   However, *Wolff* stated that tempering confidentiality interests with reasonable safety restrictions was "entirely appropriate" *Id.* at 576,  2985.  The Court found that allowing staff to open attorney mail was permissible as long as the inmates were present. *Id.*

6

28 CFR § 540.2(c).

BOP regulations state further that "[f]or incoming correspondence to be processed under the special mail procedures . . . the sender must be adequately identified on the envelope, and the front of the envelope must be marked 'Special Mail--Open only in the presence of the inmate.' " BOP P.S. 5265.11. When these requirements are met, 5265.11 states that "the Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of an enclosures as special mail."

28 CFR § 540.19 states that the prisoner is responsible for ensuring that his incoming mail is properly marked:

> (b) The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail--Open only in the presence of the inmate". Legal mail shall be opened in accordance with special mail procedures (see § 540.18).

## 1.      Court and Department of Justice Mail

Recently, the Sixth Circuit recognized certain mailings from courts and the state attorney general's office should be accorded the same protocol as attorney mail. In *Sallier,* 343 F.3d at 874, the court found mail from the courts and Attorney General's office should be opened only in the presence of the inmate, to avoid "the possibility of tampering that could unjustifiably chill the prisoner's right of access to the courts or impair the right to be represented by counsel." *Id*. at 874.

7

As noted by Defendant, prior to *Sallier,* the BOP recognized that court and justice department material should be accorded a "special status." However, Defendant argues that mail room employees acted properly in opening correspondence from the Department of Justice and various courts, since none of the mailings from either the courts or justice department was properly marked according to BOP policy. *Motion to Dismiss* at 4.

I agree. BOP P.S. 5265.11 is a reasonable regulation within the meaning of *Wolff.* The envelopes displayed in Exhibits 1, 2, 4, 15, 16, 20, 23, 25, 29, 34, 37, 38, 39, 40, and 41 did not indicate "legal mail," "open only in presence of inmate," or substantially similar language and were therefore not accorded constitutionally protected status.

## 2.    Attorney Mail

The opening of mail from Plaintiff's attorneys is more problematic. First, the number of pieces of attorney mail compliant with BOP policy but improperly opened exceeds the seven which Defendant acknowledges.

In addition to the seven letters from attorneys which Defendant admits were properly marked but nonetheless opened outside of Plaintiff's presence (see Exhibits 7, 8, 22, 27, 28, 35 and 36), ten other exhibits list an individual sender, and include the appropriate warning that the enclosed correspondence is legal/special mail (see Exhibits 3, 10, 11, 13, 14, 17, 18, 21, 24, and 33 ). Contrary to Defendant's claim

that these letters failed to conform to BOP P.S. 5265.11 by failing to state affirmatively that the individual sender is an attorney, in these exhibits, the sender's name is listed in the return address directly above the line stating his/her law firm name or legal aid organization.  Only an extreme hypertechnical and literalist reading of BOP P.S. 5265.11 could lead a rational trier of fact to conclude that the above exhibits failed to comply with the regulation.  At the very least, these exhibits present a question of fact not appropriate for consideration in a motion for dismissal.[5]

Case law belies Defendant's argument that such violations do not arise to the level of a constitutional violation.  She cites *Bieregu v. Reno,* 59 F.3d 1445, 1452 (3rd Cir. 1995) in support of her argument that improperly opening Plaintiff's legal mail on seven occasions over twenty-two months does not establish a pattern and practice sufficient to establish a constitutional violation.  I disagree.  In *Bieregu*, the Third Circuit found that the prisoner's allegation that the Defendant had improperly opened his legal mail fifteen times, including five times in a three month period, alleged a "practice and pattern"  sufficient to overcome Defendant's motion of summary judgment.  Although an "isolated incident" of improper mail handling does not

---

[5]In Exhibits 30 and 31, the sender lists his name and address, but omits his law firm's name.  However, the sender stamped the envelope "Attorney/Client Privilege", "CONFIDENTIAL," and "SPECIAL LEGAL MAIL - OPEN ONLY IN PRESENCE OF INMATE."   In Exhibits 6, 12, 19, 32, where the return address states a law firm or legal aid organization but does not list an individual, the mail was opened outside of Plaintiff's presence because "[t]he sender is not identified on the envelope."  These exhibits also present a question of fact as to substantial compliance with BOP policy, particularly with regard to mail from the Federal Public Defender.

9

2:04-cv-71706-GER-RSW   Doc # 41   Filed 05/04/05   Pg 10 of 17   Pg ID 203

constitute a violation of constitutional magnitude, *see Morgan v. Montanye,* 516 F.2d 1367, 1370-72 (2nd Cir.1975), an allegation that legal mail has been impermissibly opened on even three occasions states a constitutional claim. *See Castillo v. Cook County Mail Room Dept.* 990 F.2d 304, 306 (7th Cir. 1993).

Plaintiff's allegations appear to establish a pattern and practice of violations more adequately than in *Bieregu.* Plaintiff's Exhibits 21, 22, 24, 27, and 28, sent between July 21 and August 14, 2003, were either conceded by Defendant to have been improperly opened or create a question of fact to that effect. Over the entire eighteen month period, the sum of Defendant's conceded violations, along with the other incidents creating triable questions, total seventeen alleged violations of Plaintiff's constitutional rights.

Further, while Plaintiff does not state whether any of his legal mail was *ever* opened in his presence, Defendant appears to allow for the possibility that the forty-one exhibits represent all of Plaintiff's legal mail for the period in question. *Motion to Dismiss* at 8-9. Claiming that only seven were properly marked in accordance with BOP policy, Defendant appears to concede that *one hundred percent* of the appropriately marked legal mail was improperly opened. This hardly constitutes an "isolated incident."[6]

---

[6]Also, the time span between the first and last letter of the seven letters Defendant concedes to have been improperly handled (Exhibits 7 to 36) is July 29, 2002 to January 15, 2005 - eighteen months, not twenty-two months as stated by Defendant.

**B.      Personal Action by Defendant**

Citing *Monell v. Department of Social Services,* 436 U.S. 658, 691-92 (1978), Defendant next claims that she should be dismissed based upon Plaintiff's failure to show that she took any individual action in violation of his constitutional rights. *Motion to Dismiss* at 9.

In *Monell,* the Supreme Court held that civil rights liability cannot be based on a theory of *respondeat superior*, or mere supervisory liability.  In *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984), the Sixth Circuit held that at a minimum, a civil rights plaintiff must show that a supervisory official at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *See also, Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988) (it must be shown that supervisor "actively participated in or authorized" challenged conduct). Defendant holds a supervisory position at F.C.I. Milan as a mail room manager.  However, aside from her supervisory capacity, which alone might not sustain a civil rights claim, Plaintiff alleges that on at least two occasions he informed Defendant that her department mishandled his legal mail but received sarcastic replies such as  "this is Milan and we do it our way here." *Complaint* at 2.  On another occasion, after Plaintiff gave a mail room clerk a copy of  *Sallier  v. Brooks,* Defendant arrived, read the first page of *Sallier,* then told Plaintiff that "we don't

follow case laws here, we only follow BOP policy." *Id.*  At the very least, this Court can infer that Defendant knowingly acquiesced, if not participated directly in violating Plaintiff's rights.

As the Court noted in its May 26, 2004 dismissal of  Defendants Hemingway, Marberry, Hershberger, and Watts  based on Plaintiff's failure to allege and personal or direct involvement in the allegedly improper opening of his legal mail, "[s]imple awareness of an employee's misconduct does not lead to supervisor liability." *Opinion and Order of Partial Summary Dismissal of Defendants Hemingway, Marberry, Hershberger, and Watts*; *Quoting Lillard v. Shelby County Bd. of Education,* 76 F.3d 716, 728 (6th Cir. 1996).  However, it is Defendant Zamora's awareness of the violations occurring *coupled with her statements* expressing an intention to continue performing her job in a  manner that would ensure that future violations would come about that creates an exception to the  *Monell* prohibition on supervisory liability.

## C.    Qualified Immunity

Defendant argues that she is protected from suit by qualified immunity. *Motion to Dismiss* at 10.  Defendant maintains that she acted consistent with BOP policy and further, that Plaintiff did not argue that she "deliberately flaunted policy or arbitrarily applied the policy only to [P]laintiff." *Id.* at 12.

Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001),

12

a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful.  In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

As discussed above, Plaintiff's allegation satisfies the first prong of *Saucier*. "The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts." *Kensu, supra*, 87 F.3d at 174 . *See also Lavado,* 992 F.2d at 607 ("[I]ncoming [attorney] mail implicates constitutional rights").

In *Lavado*, the court articulated criteria for finding if such a right is "clearly established."

> "[T]o find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. . . . For the decisions of other courts to provide such 'clearly established law,' these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting."

13

*Id.*, 992 F.2d at 606-607.

Here, Plaintiff's constitutional right in maintaining the confidentiality of his attorney's mail has been clearly established. *See Sallier,* 343 F.3d at 877; *Krilich v. Federal Bureau of Prisons,* 346 F.3d 157, 159 (6th Cir. 2003).

Moreover, Defendant, in effect, concedes that the third prong of the same test has been met by acknowledging that BOP P.S. 5265.11 mandates that inmates' legal mail, subject to certain conditions, should be opened only in the addressees' presence. Such a procedure was designed to address institutional safety concerns regarding incoming mail while at the same time ensuring that mail room employees would not violate prisoners' constitutional rights by reading their legal mail. *See Wolff, supra,* 418 U.S. at 577, 94 S.Ct. at 2985. Although Defendant might argue that she adhered to BOP policy regarding her alleged treatment of Plaintiff's Department of Justice and court mail, she violated a clearly established right by acquiescing to the mishandling of Plaintiff's *attorney* mail. Moreover, at the time of the alleged violations, BOP policy recognized such a right. While "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision," *Lavado,* 992 F.2d at 611, quoting *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984), Defendant's violation of BOP regulations undermines her claim that she acted reasonably under *Higgason*.

Defendant allegedly told Plaintiff that she followed BOP policy, not "case laws," but her alleged practice of condoning the violation of  Plaintiff's rights

14

indicates that Defendant followed neither the Bureau's policy or longstanding Supreme Court precedent.  After repeatedly requesting that prison staff refrain from opening his legal mail outside of his presence, on October 20, 2003 Plaintiff produced a copy of *Sallier*, which Defendant read in part.  Despite the fact that *Sallier,* as discussed above,  reiterates inmates' right to be present when their legal mail is opened, Defendant, a mail room manager (presumably well-versed in mail room protocol) expressed an unwillingness to change her method of processing mail. Indeed, Defendant admits that soon after her conversation of October 20, 2003, two additional pieces of Plaintiff's attorney mail were handled improperly (See Exhibits 35, 36).

The constitutional magnitude of clearly established rights involved in this case,  along with Defendant's objectively unreasonable behavior in acquiescing to and/or condoning the improper treatment of Plaintiff's attorney mail, is sufficient to defeat Defendant's claim of qualified immunity.

## IV. CONCLUSION

I recommend, for the reasons stated above, that Defendant Zamora's motion for dismissal be GRANTED as to Department of Justice and court mail (Exhibits 1, 2, 4, 15, 16, 20, 23, 25, 29, 34, 37, 38, 39, 40, and 41) and DENIED as to Exhibits 3, 7,  8, 10, 11, 13, 14, 17, 18, 21, 22, 24, 27, 28,  33, 35 and 36 (attorney mail).

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D.

Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen

R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  May 4, 2005

16

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 4, 2005.


s/Gina Wilson
Judicial Assistant