UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT MERRIWEATHER,

       Plaintiff,

                        Case No.  04-71706

v.                        District Judge Gerald E. Rosen
                        Magistrate Judge R. Steven Whalen


T. A. ZAMORA, et al,.

       Defendants.

_____ /

### REPORT AND RECOMMENDATION

      Plaintiff, a prisoner in the custody of the Federal Bureau of Prisons (BOP) at

Milan Federal Correctional Institution (FCI-Milan), filed a complaint on May 12,

2004, alleging that Defendants violated his Fifth and Sixth Amendment rights by

opening correspondence from the courts, the Department of Justice, and various

attorneys in his absence, despite his repeated requests that mail room employees open

his legal mail only in his presence.[1]  Before this Court is the motion of Defendants

_____

[1]Although Plaintiff does not allege First Amendment violations in his
Complaint (they are first raised in his response motion on page 7) a prisoner's right
to receive mail generally invokes such claims.  Plaintiff bases his claims in large part
on  *Sallier v. Brooks,* 343 F. 3d 868 (6th Cir. 2003), which recognized First
Amendment violations implicit in the mistreatment of inmates' legal mail. *Id.* at 878.
Therefore, Plaintiff's pro se claim should be liberally construed to include First
Amendment violations.  *Perreault v. Hostetler* 884 F.2d 267, 270 (6th Cir. 1989);

Supervisor Steve Culver, Officer F. Finch, Supervisor D. Vroman, Officer S. Beaudrie, Officer B. Dutton, Officer Davenport, Office Ellis, Officer Awlward, Officer D. Bridges, Officer Tomich, Officer Doaks, and Officer H. Baugher for judgment on the pleadings [Docket #37] and a supplement to Defendants' motion for judgment on the pleadings [Docket #48],[2] both of which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that the motion for judgment on the pleadings [docket no. 37] be GRANTED IN PART AND DENIED IN PART.  Further, I recommend that Defendants supplement to motion for judgment on the pleadings [docket no. 48], which premises its argument for a dismissal on Plaintiff's failure to exhaust his administrative remedies pursuant to *Jones-Bey v. Johnson* 407 F.3d 801(6th Cir. 2005) be DENIED.

_____

*Haines v. Kerner*, 404 U.S. 519, 520-521; 92 S.Ct. 594, 595-596; 30 L.Ed.2d 652 (1972).

[2]Plaintiff originally brought suit against Defendants Zamora, unknown mail room employees (later named), former and current wardens John Hemingway, H.J. Marberry, Bureau of Prisons Regional Director G.L. Hershberger, and Bureau of Prison' National Administrator of Inmate Appeals Harrell Watts.  On August 23, 2004 The Honorable Gerald E. Rosen dismissed Defendants Hemingway, Marberry, Hershberger, and Watts [docket no. 7].  On September 1, 2004, Plaintiff named the twelve defendants originally listed only as "unknown mail room employees," listed above. On May 4, 2005 this Court filed a recommendation to deny Defendant Zamora's motion to dismiss [docket no. 41], adopted by the district court on September 30, 2005 [docket no. 45]. This recommendation pertains only to the 12 Defendants added to the complaint on September 1, 2004 [docket no. 9].

-2-

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, proceeding in forma pauperis, brings this *Bivens*[3] action against T.A. Zamora, mail room manager at FCI - Milan, Michigan along with Defendants Culver, Finch, Vroman, Beaudrie, Dutton, Davenport, Awlwood, Bridges, Tomich, Doaks, and Baugher.  Plaintiff, who arrived at the Milan facility on September 21, 2001, alleges that he complained "diligently and continuously" that his legal mail from various courts, the Department of Justice, and his attorneys was being opened in his absence by mail room personnel, but received only sarcastic and dismissive comments. *Complaint* at ¶ 5.  He alleges that forty-one pieces of legal mail were opened outside of his presence between October 12, 2001and March 11, 2004 by the Defendant mail room employees. *Id.* at ¶7.

Defendants base their motion to dismiss on the following arguments.  First, they assert that the incidents in question do not rise to the level of a constitutional violation; second, that Plaintiff did not allege personal action of any of the 12 present Defendants; and third, that Defendants are entitled to qualified immunity. Last, Defendants argue in their supplemental brief that dismissal is appropriate based on Plaintiff's failure to exhaust his administrative remedies.

---

[3]*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388; 91 S.Ct. 1999, 29; L.Ed.2d 619 (1971)

## II.  STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is analyzed under the standards for dismissal stated in Rule 12(b)(6).[4]  *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 436 (C.A.6 (6th Cir. 1988).  Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."  Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct.

---

[4]Defendants properly brought a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) rather than a motion to dismiss under Rule 12(b)(6).  "[A] motion under Rule 12(b)(6) could not properly lie" because Rule 12(b) requires that "[a] motion making any of these defenses shall be made before pleading." *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 436 (6th Cir. 1988); Fed.R.Civ.P. 12(b).  Defendants filed an answer on January 3, 2005 [Docket no. 32] approximately two months before filing the instant motion.

99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the

-5-

opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.  ANALYSIS

#### A.  Constitutional Violations[5]

Defendants first argue that Plaintiff's allegations of improper mail handling do not rise to the level of a constitutional violation. Defendants argues that of the forty-one pieces of legal mail opened outside Plaintiff's presence, only seven of the pieces in question comported with the requirements set out in Bureau of Prisons'(BOP) Program Statement (P.S.) 5265.11 for the labeling of legal or otherwise "special" mail and were therefore opened improperly. *Motion for Judgment on the Pleadings* at 8-13. Defendants cite *Biregu v. Reno,* 59 F.3d 1445, 1452 (3rd Cir. 1995) to support

---

[5]Sections A. and C. of Defendants' brief contain the same arguments as those presented in Defendant Zamora's dismissal motion, denied by the district court on September 30, 2005 [docket no. 45]. Accordingly, this Court draws in large part on its former Report and Recommendation which formed the basis of that order. *Merriweather v. Zamora,* 2005 WL 2448902, 1 (E.D.Mich.2005)[docket no. 41]

the contention that improperly opening seven out of forty-one pieces of mail does not amount to a "pattern and practice" sufficient to implicate Plaintiff's constitutional rights.

Courts have uniformly recognized that prisoners hold an interest in confidential attorney communication. "[T]he prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th 2003). *See Kensu v. Haigh,* 87 F.3d 172, 174 (6th Cir.1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts."). "[A] prisoner's right to receive mail is protected by the First Amendment and . . .the attorney-client relationship is shielded from unwarranted intrusion in criminal settings by the Sixth Amendment. *Sallier,* 343 F.3d at 878.

In *Wolff* v. *McDonnell,* 418 U.S. 539, 576-577, 94 S.Ct. 2963, 2985 (1974), the Court found that while inmates' legal mail should be opened only in their presence, inmates' rights were subject to reasonable prison regulations.[6]  *See, Parrish v.*

---

[6]*Wolff*  referred to letters from attorneys, not other types of legal mail recognized as "special" by the BOP.  However, *Wolff* stated that tempering confidentiality interests with reasonable safety restrictions was "entirely appropriate" *Id.* at 576,  2985.  The Court found that allowing staff to open attorney mail was permissible as long as the inmates were present. *Id.*

*Johnson,* 800 F.2d 600, 603 (6th Cir. 1986) ("In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly-applied policy, open an inmate's incoming mail.")

BOP P.S. 5265.11 states that "special mail" includes mail from the following senders:

> "President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts."

28 CFR § 540.2(c).

BOP regulations state further that "[f]or incoming correspondence to be processed under the special mail procedures . . . the sender must be adequately identified on the envelope, and the front of the envelope must be marked 'Special Mail--Open only in the presence of the inmate.' " BOP P.S. 5265.11. When these requirements are met, 5265.11 states that "the Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of an enclosures as special mail."

28 CFR § 540.19 states that the prisoner is responsible for ensuring that his incoming mail is properly marked:

> (b) The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail--Open only in the presence of the

-8-

inmate". Legal mail shall be opened in accordance with special mail procedures (see § 540.18).

### 1.      Court and Department of Justice Mail

Recently, the Sixth Circuit recognized that certain mailings from courts and the state attorney general's office should be accorded the same protocol as attorney mail. In *Sallier,* 343 F.3d at 874, the court found that mail from the courts and Attorney General's office should be opened only in the presence of the inmate, to avoid "the possibility of tampering that could unjustifiably chill the prisoner's right of access to the courts or impair the right to be represented by counsel." *Id.* at 874.

As noted by Defendants, prior to *Sallier,* the BOP recognized that court and justice department material should be accorded a "special status." However, Defendants argue that mail room employees acted properly in opening correspondence from the Department of Justice and various courts, since none of the mailings from either the courts or justice department was properly marked according to BOP policy. *Motion to Dismiss* at 4.

I agree.  BOP P.S. 5265.11 is a reasonable regulation within the meaning of *Wolff.* The envelopes displayed in Exhibits 1, 2, 4, 15, 16, 20, 23, 25, 29, 34, 37, 38, 39, 40, and 41 did not indicate "legal mail," "open only in presence of inmate," or substantially similar language and were therefore not accorded constitutionally protected status.

2.      **Attorney Mail**

The opening of mail from Plaintiff's attorneys is more problematic. First, the number of pieces of attorney mail compliant with BOP policy but improperly opened exceeds the seven which Defendants acknowledge.

In addition to the seven letters from attorneys which Defendants admit were properly marked but nonetheless opened outside of Plaintiff's presence (see Exhibits 7, 8, 22, 27, 28, 35 and 36), ten other exhibits list an individual sender, and include the appropriate warning that the enclosed correspondence is legal/special mail (see Exhibits 3, 10, 11, 13, 14, 17, 18, 21, 24, and 33 ). Contrary to Defendants' claim that these letters failed to conform to BOP P.S. 5265.11 by failing to state affirmatively that the individual sender is an attorney, in these exhibits, the sender's name is listed in the return address directly above the line stating his/her law firm name or legal aid organization. Only an extreme hypertechnical and literalist reading of BOP P.S. 5265.11 could lead a rational trier of fact to conclude that the above exhibits failed to comply with the regulation. At the very least, these exhibits present a question of fact not appropriate for consideration in a motion for dismissal.[7]

_____

[7]In Exhibits 30 and 31, the sender lists his name and address, but omits his law firm's name. However, the sender stamped the envelope "Attorney/Client Privilege", "CONFIDENTIAL," and "SPECIAL LEGAL MAIL - OPEN ONLY IN PRESENCE OF INMATE." In Exhibits 6, 12, 19, 32, where the return address states a law firm or legal aid organization but does not list an individual, the mail was opened outside of Plaintiff's presence because "[t]he sender is not identified on the envelope." These exhibits also present a question of fact as to substantial compliance with BOP policy, particularly with regard to mail from the Federal Public Defender.

-10-

Case law belies Defendants' argument that such violations do not rise to the level of a constitutional violation.  They cite *Bieregu v. Reno,* 59 F.3d 1445, 1452 (3rd Cir. 1995) in support of the argument that improperly opening Plaintiff's legal mail on seven occasions over twenty-two months does not establish a pattern and practice sufficient to establish a constitutional violation.  I disagree.  In *Bieregu*, the Third Circuit found that the prisoner's allegation that the Defendant had improperly opened his legal mail fifteen times, including five times in a three month period, alleged a "practice and pattern"  sufficient to overcome Defendant's motion of summary judgment.  Although an "isolated incident" of improper mail handling does not constitute a violation of constitutional magnitude, *see Morgan v. Montanye,* 516 F.2d 1367, 1370-72 (2nd Cir.1975), an allegation that legal mail has been impermissibly opened on even three occasions states a constitutional claim.  *See Castillo v. Cook County Mail Room Dept.* 990 F.2d 304, 306 (7th Cir.  1993).

Plaintiff's allegations appear to establish a pattern and practice of violations more adequately than in *Bieregu.*  Plaintiff's Exhibits 21, 22, 24, 27, and 28, sent between July 21 and August 14, 2003, were either conceded by Defendants to have been improperly opened or create a question of fact to that effect.  Over the entire eighteen month period, the sum of the conceded violations, along with the other incidents creating triable questions, total seventeen alleged violations of Plaintiff's constitutional rights.

-11-

Further, Plaintiff does not state whether any of his legal mail was *ever* opened in his presence, allowing for the possibility that the forty-one exhibits represent all of Plaintiff's legal mail for the period in question.[8]  If so, the fact that over 40 percent of his mail was improperly opened further belies the argument that this practice was an isolated incident. [9]

Therefore, consistent with the prior Report and Recommendation [Docket #41] and this Court's order adopting the same [Docket #45], I recommend that the motion to dismiss be granted as to Department of Justice and Court mail, and denied as to attorney mail.

**B.     Personal Action by Defendants**

Citing *Monell v. Department of Social Services,* 436 U.S. 658, 691-92 (1978), Defendants, allegedly mail room employees, claim that they should be dismissed based on Plaintiff's failure to show that they took any individual action in violation

---

[8]Contrary to Plaintiff's conclusion, stated in his response to Defendant Zamora's objection to the recommendation to deny her motion to dismiss, this Court did *not* find that the 41 pieces of mail in dispute represents 100 percent of his incoming legally-related mail during the period in question [Docket no. 45, ¶2]. Instead, the Court merely noted that Defendant(s)' position would be further undermined *if* the mailings were later found to represent all of Plaintiff's legal mail.

[9]Also, the time span between the first and last letter of the seven letters Defendant concedes to have been improperly handled (Exhibits 7 to  36) is July 29, 2002 to January 15, 2004 - eighteen months, not  twenty-two months as stated by Defendant.

-12-

of his constitutional rights. *Motion* at 13-14. Defendants' brief further asserts that Defendants Culver, Awlward, Bridges, Tomich, Doaks, and Baugher did not open mail as a part of their regular job duties. *Id.* at 14.

To establish liability under *Bivens*, "there must be some causal connection between the defendant named and the injury allegedly sustained."*Avant v. Rice* 1992 WL 359633, 6 (M.D.Fla.,1992), *citing Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991); *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986) (per curiam). However, "[a]t the in forma pauperis stage, this personal involvement may either be stated specifically in the complaint or inferred from the surrounding circumstances." *Luedtke v. Gudmanson,* 971 F.Supp. 1263, 1268 (E.D.Wis.,1997); *Williams v. Faulkner,* 837 F.2d 304 (7th Cir.1988), *aff'd sub nom., Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's action, which alleges that a sizable portion of his legal mail was improperly opened outside his presence, sufficiently alleges unconstitutional practices against all 12 mail room employees for the purposes of pleading. The original complaint, referring to present Defendants as "unknown mailroom employees," was later supplemented with the names of the individual staff members [docket no. 9]. While Plaintiff does not specify which staff member opened which envelope on what occasional, as discussed in Section A., he has properly pled constitutional violations. Further, jail personnel charged with handling prisoner mail had an exclusive ability

-13-

to commit the alleged improprieties.  Thus, that the alleged constitutional violations were committed by mail-handling staff can be reasonably inferred for the purposes of pleading. *Luedtke, supra.*

In addition, requiring Plaintiff to state at present which staff member improperly opened which piece of legal mail on what day places him in an untenable situation - his claim that his legal mail was opened outside his presence cannot go forward because the violation itself prevents him from naming the specific improprieties committed by the individual defendants.[10]  Although Defendants cite *Mowatt v. Brown,* 1990 WL 59896, 1 (6th Cir. 1990), which dismissed a claim based on the plaintiff's failure to state which employee actually opened his mail, the Sixth Circuit's holding actually turned on its rejection of the plaintiff's theory of respondeat superior liability, unaccompanied by an allegation that *any* of the defendants actually opened his legal mail.  *Id*. at 1.  In contrast, Plaintiff in this case alleges that mail room employees improperly opened his legal mail outside his presence.

Aside from the fact that circumstances indicate that a mail room employee or employees committed the alleged  violations, I note that Plaintiff's difficulties in stating specific allegations against individuals was compounded by his apparent inability to obtain access to the names of any individual mail-handlers until several

---

[10]Of course, the fact Plaintiff survives a Rule 12(c) motion does not ensure that he will be similarly successful in withstanding a motion for summary judgment, following discovery.

-14-

months after the commencement of this action. Further, although Defendants Culver, Awlward, Bridges, Tomich, Doaks, and Baugher contend that they should be dismissed since their regular job duties do not include opening prisoner mail, these assertions, presently unaccompanied by affidavits by these Defendants, in and of itself are not sufficient to grant their motion.[11]

## C.    Qualified Immunity

Defendants also argue that they are protected from suit by qualified immunity. *Motion* at 14.  Defendants maintains that they acted consistent with BOP policy and further, that Plaintiff did not argue that they "deliberately flaunted policy or arbitrarily applied the policy only to [P]laintiff." *Id.* at 17.

Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a governmental official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendants violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful.  In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity (1) was there a violation of a constitutionally protected right; (2) was that

---

[11]Although footnote 9 of Defendants' motion for judgment on the pleadings states  that affidavits by Defendants Culver, Awlward, Bridges, Tomich, Doaks, and Baugher stating that their regular job duties did not include opening prisoner mail can be provided to the court, none of Defendants have as yet provided statements.

-15-

right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

As discussed above, Plaintiff's allegation satisfies the first prong of *Saucier*. "The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts." *Kensu, supra*, 87 F.3d at 174 . *See also Lavado*,  992 F.2d at 607 ("[I]ncoming [attorney] mail implicates constitutional rights").

In *Lavado*, the court articulated criteria for finding if such a right is "clearly established."

> "[T]o find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. . . . For the decisions of other courts to provide such 'clearly established law,' these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Id*., 992 F.2d at 606-607.

Here, Plaintiff's constitutional right in maintaining the confidentiality of his attorney's mail has been clearly established.  *See Sallier*,  343 F.3d at 877; *Krilich v. Federal Bureau of Prisons,* 346 F.3d 157, 159 (6th Cir. 2003).

Moreover, Defendants, in effect, concede that the third prong of the same test has been met by acknowledging that BOP P.S. 5265.11 mandates that inmates' legal mail, subject to certain conditions, should be opened only in the addressees' presence.

Such a procedure was designed to address institutional safety concerns regarding incoming mail while at the same time ensuring that mail room employees would not violate prisoners' constitutional rights by reading their legal mail. *See Wolff, supra,* 418 U.S. at 577, 94 S.Ct. at 2985. Although Defendants might argue that they adhered to BOP policy regarding their alleged treatment of Plaintiff's Department of Justice and court mail, they violated a clearly established right by the mishandling of Plaintiff's *attorney* mail. Moreover, at the time of the alleged violations, BOP policy recognized such a right. While "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision," *Lavado,* 992 F.2d at 611, quoting *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984), Defendant's violation of BOP regulations undermines their claim that they acted reasonably under *Higgason*.

In addition, co-Defendant Zamora allegedly told Plaintiff that she followed BOP policy, not "case laws." However, the department's alleged practice of condoning the violation of Plaintiff's rights by opening his legal mail indicates that Defendants followed neither the Bureau's policy nor longstanding Supreme Court precedent. After repeatedly requesting that prison staff refrain from opening his legal mail outside of his presence, on October 20, 2003 Plaintiff produced a copy of *Sallier* to Zamora. Despite the fact that *Sallier,* as discussed above, reiterates inmates' right to be present when their legal mail is opened, Defendant Zamora, a mail room

-17-

manager (presumably well-versed in mail room procedures) expressed an unwillingness to change the department's method of processing mail.   The present Defendants, who were presumptively aware of BOP's procedure for handling legal mail, concede that soon after their supervisor's conversation of October 20, 2003, two additional pieces of Plaintiff's attorney mail were handled improperly (See *Complaint*, Exhibits 35, 36).

The constitutional magnitude of clearly established rights involved in this case, along with allegations stating objectively unreasonable behavior in mishandling Plaintiff's attorney mail is sufficient to defeat Defendants' claim of qualified immunity.

### D.    Exhaustion of Administrative Remedies

Defendants argue in the supplement [docket no. 48] to their original motion that the complaint should be dismissed on the basis that Plaintiff did not exhaust his administrative remedies as to the 12 present Defendants. *Supplement* at 5.  Pursuant to *Jones-Bey v. Johnson supra*, Defendants' maintain that Plaintiff failed to adhere to the "total exhaustion" rule which mandates the dismissal of an action that includes both exhausted and unexhausted Defendants. *Id*. at 4-5.  They submit that the complaint referring to them as "unknown mail room employees" in the administrative grievances did not give them fair notice of Plaintiff's complaints.   In addition,

-18-

Defendants argue that only six of the 12 previously unnamed mail room employees are members of the mail room staff.  *Id.* at 5.  They maintain instead that "Defendants Awlward and Ellis are Legal Instrument Examiners; Defendant Baugher is a Correctional Officer; and Defendants Doaks, Bridge, and Tomich are all Senior Officers." *Id.*  Defendants assert that "[d]eclarations . . . to this effect can be provided to the Court, should it desire them." *Id.* at fn 2.

To satisfy the exhaustion requirement, an administrative grievance must be factually specific as to both the person and the acts complained of.  If a particular defendant has not been specifically named in a grievance, the claim as to that defendant has not been exhausted.  In *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001), the Sixth Circuit adopted a bright line rule that a grievance must specifically  name the person who is ultimately sued.  In reaching its conclusion, *Curry* relied in part on *Freeman v. Francis, supra* at 644, where the Court stated that "the importance of using the prison grievance process [is] to alert prison officials to problems."

Generally, a failure to exhaust even one Defendant mandates dismissal of the whole suit.[12]  In  *Jones-Bey v. Johnson, supra* at 807, the court adopted a "total

---

[12]*Johnson v. Sadzewicz,* –F. Supp. 2d– 2006 WL 783448, 3 (E.D.Mich.2006) notes that the total exhaustion rule nonetheless allows a plaintiff to preserve his cause of action by amending  his complaint to drop unexhausted defendants.  *Jones-Bey, citing  Rose v. Lundy,* 455 U.S. 509, 519, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), supports its embrace of the total exhaustion rule by reasoning that the Supreme Court adopted  the same rule in habeas corpus cases.  However,  *Rose* mitigates its bright-line stance by providing that a petitioner "can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims."

-19-

exhaustion" rule, requiring that unless all claims against all Defendants are exhausted,

the complaint must be dismissed in its entirety:

> "We adopt the total exhaustion rule, in large part, because the plain language
> of the statute dictates such a result. Section 1997e(a) states that no 'action'
> shall be brought in federal court until administrative remedies have been
> exhausted. However, in subsection (c), the statute allows district courts to
> dismiss frivolous "actions" *or* 'claims.' 42 U.S.C. § 1997e(c)(1) & (2).
> Congress's use of the word 'claims' in subsection (c)(2) indicates that 'claims'
> are individual allegations and 'actions' are entire lawsuits."

However, in the present case, Plaintiff's failure to refer to the Defendants as

anything other than "unknown mail room employees" at the administrative level does

not present grounds for dismissal. The only exception to the requirement that a

defendant be specifically named in an administrative grievance is where the plaintiff

does not know, and cannot reasonably discover the person's name. *See Thomas v.

Woolum,* 337 F.3d 720, 734 (6th Cir. 2003) ("[A]n inmate need not identify each

officer by name when the identities of the particular officers are unknown."). In this

regard, the Eleventh Circuit in *Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir.

2000), held:

> "Section 1997e(a) requires a prisoner to exhaust all 'available'
> administrative remedies, and implicit in that requirement is an
> obligation on the prisoner to provide those officials who will pass upon
> the grievance all the relevant information he has, including the identity
> of any officials he thinks have wronged him and any witnesses. But a
> prisoner cannot provide that which he does not have; he cannot identify

---

455 U.S. at 520.

-20-

those whose identities are unknown to him.  Pegging our thinking to the words of the statute, a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is 'available' to the prisoner."

In so ruling, the Eleventh Circuit explicitly distinguished *Hartsfield v. Vidor,* 199 F.3d 305 (6th Cir. 1999), where the Sixth Circuit found a claim unexhausted as to two defendants who had not been named in a grievance:

> "The Sixth Circuit in *Hartsfield* did hold that § 1997e(a) barred a lawsuit against the two prison defendants not named in the grievance the plaintiff had filed.  But the difference between that case and this one lies in the additional fact that the plaintiff in *Hartsfield* knew the identity of those two defendants and could have named them in a grievance....The result in *Hartsfield* is entirely consistent with the rule we adopt today, which does require a prisoner's administrative grievance to identify all who are known to have injured him and to provide as much relevant information as reasonably possible in their administrative grievances."  *Brown*, 212 F.3d at1208, fn. 3.

In *Wilkins v. Bittenbender,* 2006 WL 860140, 7  (M.D.Pa. 2006), the court denied a dismissal motion based on the inclusion of "John Doe" defendants, stating that "John Doe defendants may only be allowed 'to stand in for the alleged real parties until discovery permits the intended defendants to be installed.'" *See also Johnson v. City of Erie,* 834 F.Supp. 873, 878 (W.D.Pa.1993) (citations omitted).  I note in the instant case that Plaintiff named the present Defendants long before the advent of discovery.  Viewing the complaint in its most favorable light, this Court must accept as true that when Plaintiff filed his complaint against "unknown mail room employees," he was not in a position to reasonably discover the names of those

individuals. *Thomas v. Woolum, supra* at 734. Moreover, an administrative grievance lodged against "unknown mail room employees" when the entire department apparently houses fewer than 20 individuals refers to a sufficiently narrow class of individuals to place them on notice.

For similar reasons I recommend at present that Defendants' motion for dismissal based on the assertion that six of the 12 do not perform "mail room" jobs be denied. Although the motion alleges that Defendants Awlward, Ellis, Baugher, Doaks, Bridge, and Tomich "are not considered part of the mail room staff," this assertion stands unaccompanied by affidavits by these Defendants attesting to this claim. Plaintiff's September 1, 2004 submission to the Court names the 12 Defendants as mail room employees. His statement that the 12 named Defendants perform mail room work must for now be accepted as true; that Defendants' attorney simply contradicts this assertion in her legal brief is insufficient to support a Rule 12(c) dismissal.

Accordingly, for purposes of Rule 12 (c), there appears to be a question of fact as to whether six of the twelve Defendants actually worked in the mail room department. If those six did not actually work under the authority of Defendant Zamora, factual questions also remain as to whether their job duties included mail-related functions to the extent they could be construed as mail room employees for the purposes of Plaintiff's grievance. These issues cannot be determined based on the limited information presently before the Court. *See Wilkins, supra,* 2006 WL

860140, 5, where the court, denying a summary judgment motion, held "A review of the record . . . shows that there are issues of material fact in dispute as to whether the [the plaintiff's] purportedly unexhausted claims should be dismissed for non-exhaustion." Therefore, at present, I cannot agree with Defendants' characterization of the inclusion of those "not considered" mail room staff, as a failure to exhaust.

In closing, I note that Plaintiff has not changed his allegation, made at the beginning of the grievance process and set forth in his Complaint, that mail room staff improperly opened his legal mail. He does not now allege that the Defendants who have brought this motion had a role other than that of mail room staff, or that they undertook any actions other than those alleged in the grievance and the Complaint. Even if his Complaint is ultimately found, as a matter of fact, to include individuals who do not handle mail to the extent they can be deemed "mail room staff," this does not negate the fact that since the inception of this process Plaintiff placed staff members charged with caring for inmate mail, as well as prison officials, on notice. If he has now mistakenly included six non-mail room employees who are later determined to having only a minimal or non-existent role in processing inmate mail (and thus were not personally involved), the Court can dismiss those individuals pursuant to Fed. R. Civ. P. 56 (c), following discovery or proper submission of opposing affidavits.

## IV. CONCLUSION

I recommend, for the reasons stated above, that Defendants' motion for

judgment on the pleadings [Docket #37] be GRANTED as to Department of Justice and court mail (Exhibits 1, 2, 4, 15, 16, 20, 23, 25, 29, 34, 37, 38, 39, 40, and 41) and DENIED as to Exhibits  3, 7,  8, 10, 11, 13, 14, 17, 18, 21, 22, 24, 27, 28,  33, 35 and 36 (attorney mail).  Further, Defendants' supplemental argument that Plaintiff did not exhaust his administrative remedies [Docket #48]  should be DENIED.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  May 24, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 24, 2006.

S/G. Wilson
Judicial Assistant